BERTRAND v CITY OF MACKINAC ISLAND

Docket No. 243923. Submitted March 5, 2003, at Lansing. Decided March 25, 2003, at 9:00 A.M. Leave to appeal sought.

Donald Bertrand, who suffers from multiple sclerosis, brought an action in Mackinac Circuit Court under the Persons with Disabilities Civil Rights Act (PWDCRA), MCL 37.1101 *et seq.*, and the Americans with Disabilities Act (ADA), 42 USC 12101 *et seq.*, against the city of Mackinac Island, seeking a permanent injunction entitling him to use an electric-assist tricycle to cycle the public streets of Mackinac Island. The city argued that use of the electric-assist tricycle violated its ordinance against the use of motorized vehicles, and that the plaintiff was not entitled to relief under the PWDCRA or the ADA. The court, Nicholas J. Lambros, J., entered a permanent injunction in favor of the plaintiff. The city appealed.

The Court of Appeals *held*:

1. The PWDCRA provides that a person shall not deny an individual the full and equal enjoyment of the services, facilities, or advantages of a place of public service because of a disability that is unrelated to the individual's ability to utilize and benefit from the services. MCL 37.1302(a). The defendant city is a public service as defined by MCL 37.1301(b), and the city's public streets are plainly services, facilities, or advantages provided and regulated by the city. Under the plain language of MCL 37.1302(a), a disabled person is generally entitled to the full and equal enjoyment of services provided by the defendant. In bringing this action seeking permission to use an electric-assist tricycle on the city's public streets, the plaintiff is seeking full and equal enjoyment with nondisabled persons of those streets for the purposes of cycling. Thus, the plaintiff's claim is within the ambit of the PWDCRA. For these same reasons, the plaintiff's claim also falls within the ambit of the ADA.

2. The fact that this case involves the plaintiff's personal desire to use an electric-assist tricycle on the city's public streets does not remove this case from within the ambit of the PWDCRA. Claims by disabled persons of a failure to provide reasonable accommodations for their disabilities with regard to public services would typically involve their personal preferences given the lack of a legal obligation on individuals to use particular public services. How-

ever, the PWDCRA generally provides protection to disabled persons when they personally desire to use public services. Nothing in the PWDCRA excludes the use of public services, as part of a private activity or personal preference, from the scope of the PWDCRA, and the Court of Appeals will not construe the PWDCRA to include a private activity or personal-preference exclusion.

3. Contrary to the city's argument, the plaintiff is a "qualified individual with a disability" under the ADA, 42 USC 12131(2), and the similar provisions of the PWDCRA, MCL 37.1302, 37.1103(l)(ii), because the plaintiff, with the adaptive aid of an electric motor, has the ability to use the city's public service (the public streets) for cycling purposes in the same manner as the nondisabled.

4. The city's argument that, because it provides other reasonable accommodations (the use of electric wheelchairs and electric-powered, three-wheeled carts) to disabled persons for use on public streets, it was not required to allow use of the electric-assist tricycle fails because the relevant activity in this case is cycling, and while the wheelchairs and carts may accommodate the disabled with regard to walking on the public streets, these accommodations are not reasonably analogous to cycling on the public streets. In other words, the city has not accommodated the plaintiff's use of the city's public streets for the purpose of cycling.

5. Allowing the use of electric-assist tricycles by people with appropriate disabilities on the city's public streets would not fundamentally or substantially alter the nature and character of Mackinac Island. Rather, the use poses only the possibility of a peripheral impact on the historic ban on motor vehicles, because the city has demonstrated its ability to preserve its unique environment through the use of permits and enforcement.

Affirmed.

CIVIL RIGHTS — PERSONS WITH DISABILITIES CIVIL RIGHTS ACT — AMERICANS WITH DISABILITIES ACT — CYCLING.

A person with a disability that does not prevent the person from using a municipality's streets for riding a cycle propelled by the rider's pedaling, by an electric motor, or by a combination of both, is entitled to such use under the Persons with Disabilities Civil Rights Act and the Americans with Disabilities Act, notwithstanding a municipal ordinance that bans cycles powered by electric motors (MCL 37.1302[a], 42 USC 12132).

American Civil Liberties Union of Michigan (by *Stewart R. Hakola*, Cooperating Attorney, *Michael J. Steinberg* and *Kary L. Moss*) for the plaintiff.

*Fraser, Trebilcock, Davis & Dunlap, P.C.* (by *David D. Waddell* and *Brandon W. Zuk*), for the defendant.

Before: DONOFRIO, P.J., and SAAD and OWENS, JJ.

DONOFRIO, J. Defendant, city of Mackinac Island, appeals as of right an order granting a permanent injunction in favor of plaintiff, Donald Bertrand. We affirm.

This case involves claims by plaintiff that he is entitled under the Persons with Disabilities Civil Rights Act (PWDCRA), MCL 37.1101, *et seq.*, and the Americans with Disabilities Act (ADA), 42 USC 12101, *et seq.*, to use an electric-assist tricycle, which is a tricycle that can be pedaled but also is equipped with a small electric motor, on the public streets under the jurisdiction of defendant. Defendant seeks to bar plaintiff from using the electric-assist tricycle under a local ordinance that generally bars the use of "motor vehicles."[1]

Motor vehicles or "horseless carriages" have generally been banned from Mackinac Island by the local government in areas under its control since 1898 and by the Mackinac Island State Park Commission in areas under its jurisdiction since 1901. In 1907, the park commission specifically cited motor bicycles as an illegal mode of transportation and included them in the motor-vehicle ban. Currently, city of Mackinac Island Ordinance Number 327 generally prohibits the possession or use of a "motor vehicle" within the city.[2] The ordinance defines a "motor vehicle" to include "any mechanical device that is self-propelled

---

[1] We note that the general ban on motor vehicles is a primary and distinctive feature of Mackinac Island.

[2] The trial court indicated at the evidentiary hearing in this case that it was taking judicial notice of the ordinance.

and of [sic] which operates and moves under the power of one or a combination of any of these means; internal or external combustion engines, electricity; human power when operated in conjunction with or in concert with one of the foregoing." The ordinance excepts from the definition of a motor vehicle (1) snowmobiles and (2) mechanized wheelchairs or "electric powered 3-wheeled, one-person scooter/cart[s]" when used by a person with "a temporary or permanent handicap, that significantly limits ambulation or necessitates the use of such a device for mobility, and as prescribed by a licensed health professional."

Plaintiff lives on Mackinac Island as a summer resident. He suffers from secondary progressive multiple sclerosis (MS) that has caused atrophy in his left side, leaving him with "very little use" of his left leg and arm. Plaintiff believes that all permanent residents of Mackinac Island probably own a bicycle and that using a bicycle on the island is important for various reasons, including entertainment, personal business, shopping, and exercise. Despite his illness, plaintiff can ride a tricycle because it has three wheels and allows him to ride without falling. Plaintiff's electric-assist tricycle has regular bicycle pedals and an electric assist that can be engaged and disengaged. Plaintiff sometimes pedals the tricycle under his own power, sometimes engages the electric assist, and sometimes uses his own power supplemented by the electric assist. Plaintiff estimated that his electric-assist tricycle travels at ten to twelve miles an hour, which he believes is slower than what a "normal person" pedals. The tricycle's electric motor makes a "very little whirring sound."

Plaintiff received a letter from the city attorney in November or December 2001, stating that his electric-assist tricycle violated a city ordinance, prompting plaintiff to seek injunctive relief. The trial court entered a temporary restraining order that essentially allowed plaintiff to use his electric-assist tricycle (referred to as an "electric assist bicycle" in the order) in defendant city pending resolution of this case. At an evidentiary hearing the parties stipulated that plaintiff has a disability as defined under the ADA, although defendant reserved the right to argue that plaintiff was not a "qualified" disabled individual. Following the hearing, the trial court issued a decision concluding that plaintiff was entitled to use an electric-assist cycle on defendant's public streets. This appeal followed.

On appeal, defendant first argues that plaintiff's claim that he should be allowed to use an electric-assist tricycle on defendant's public streets does not involve the use of a public service or facility within the ambit of the PWDCRA and the ADA. We disagree. Because this issue involves questions of statutory construction, we will review it de novo. *Weakland v Toledo Engineering Co, Inc*, 467 Mich 344, 347; 656 NW2d 175 (2003).

Defendant's argument effectively constitutes an assertion that using a bicycle, tricycle, or similar "cycling" device to traverse public streets is a "private activity" and does not involve a public service or facility subject to the PWDCRA or the ADA, at least where the city allows a disabled person to make use of the public streets with other accommodations such as the use of an electric wheelchair. We note that defendant does not cite case law in support of this

argument, but rather relies simply on quoting MCL 37.1302(a) of the PWDCRA and 42 USC 12132 of the ADA and providing its own analysis.

With regard to the PWDCRA, MCL 37.1302(a) states:

> Except where permitted by law,[3] a person shall not:
>
> (a) Deny an individual *the full and equal enjoyment* of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation or public service because of a disability that is unrelated to the individual's ability to utilize and benefit from the goods, services, facilities, privileges, advantages, or accommodations or *because of the use by an individual of adaptive devices or aids.* [Emphasis added.]

The applicable statutory definition of a "public service" includes a city, MCL 37.1301(b), and thus includes defendant. The public streets involved in this case are plainly "services," "facilities," and "advantages"[4] provided and regulated by defendant. It is undisputed that people are allowed to use typical bicycles or tricycles that are not equipped with any type of electric motor on defendant's public streets.[5]

---

[3] There are exceptions to the general legal duty imposed by MCL 37.1302(a). However, this issue does not involve such exceptions, but only the general duty imposed by the PWDCRA with regard to the use of public services.

[4] In the interest of efficiency, we will hereinafter generally refer to the provision of the public streets as simply the provision of a public service.

[5] Defendant raises no challenge to the following statements by the trial court in its findings of facts:

> Cycling is an important part of the culture on Mackinac Island, which includes not only transportation but also the enjoyment of a motor vehicle free environment. Almost every resident of the island uses a cycle. Residents, and island visitors, use cycles as a primary mode of transportation and for enjoyment of the provided esthetic experience.

The defendant city admits it regulates all aspects of transportation on its streets by ordinance, including motor-vehicle prohibition, licensing of cycles, issuing temporary motor-vehicle permits, and ticketing street-use ordinance violations. It is the city's exercise of its regulatory authority over the city's public streets that constitutes a public service.

Under the plain language of MCL 37.1302(a), a disabled person is generally entitled to "the full and equal enjoyment" of services provided by defendant. Plaintiff alleged that, because of his condition, he was unable to ride a two-wheeled bicycle because he lacked the ability to balance it without falling over and because, on occasion, he would become fatigued and lack the strength to ride uphill. Accordingly, in bringing this action seeking permission to use an electric-assist tricycle on defendant's public streets, plaintiff is seeking "full and equal enjoyment" with nondisabled persons of those streets for the purpose of cycling. Thus, we find that plaintiff's claim is within the ambit of the PWDCRA, because he is seeking full and equal enjoyment with nondisabled people of a service provided by defendant. See *Cebreco v Music Hall Center for the Performing Arts, Inc*, 219 Mich App 353, 355-360; 555 NW2d 862 (1996) (finding that the plaintiff raised a "prima facie issue" that the defendant failed to accommodate her disability based on evidence that its accommodations did not allow her "equal enjoyment" of the defendant's musical and theatrical presentations).

Further, MCL 37.1302(a) specifies that it generally precludes denial of the full and equal enjoyment of a public service or facility because of "the use by an individual of adaptive devices or aids." Our review of

the record reflects that the relevant distinguishing factor between the electric-assist tricycle that plaintiff desires to use and a typical bicycle or tricycle is the presence of a small electric motor. We view this electric motor as plainly constituting an adaptive aid to facilitate use of a tricycle by a disabled person. See *Weakland, supra* at 350 (describing a "vehicular modification" as an "adaptive aid.")

Contrary to the premise of defendant's argument, the fact that this case involves plaintiff's personal desire to use an electric-assist tricycle on defendant's public streets does not remove this case from within the ambit of the PWDCRA. Rather, claims by disabled persons of a failure to provide reasonable accommodations for their disabilities with regard to public services would typically involve their "personal preferences," given the general lack of a legal obligation on individuals to use particular public services. However, the PWDCRA generally provides protection to disabled persons when they personally desire to use public services. We found nothing in the relevant statutory language that excludes the use of public services or facilities, as part of a private activity or personal preference, from the scope of the PWDCRA. Thus, because the statute is unambiguous in this regard, we will enforce it as written and will not construe the PWDCRA to include a private activity or personal preference exclusion. *Weakland, supra* at 347.

With regard to the ADA, 42 USC 12132 states:

Subject to the provisions of this subchapter[6], no qualified individual with a disability shall, by reason of such dis-

---

[6] As with the PWDCRA, there are exceptions to the general requirements of the ADA, but those exceptions are not pertinent to this issue.

ability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

Defendant is subject to this requirement because the relevant statutory definition of "public entity" expressly includes a local government. 42 USC 12131(1)(A). As discussed above, one of the benefits of defendant's provision of public streets is the ability to engage in cycling on those streets. Thus, plaintiff's claim that not being allowed to use his electric-assist tricycle on the public streets falls within the ambit of the ADA's grant to disabled persons of the right not to be denied the benefits of the services of a public entity. Therefore, defendant's argument with regard to the ADA also fails.

Defendant next argues that even assuming that plaintiff's desire to pedal a cycle is a public service or activity, plaintiff is not a qualified individual with a disability. Our review of the record reveals that defendant did not preserve its argument that plaintiff was not a "qualified" individual with a disability. While defendant indicated that it would not stipulate to plaintiff being qualified and retained the right to argue that he was not, no such argument was actually made by defendant before the trial court. Nevertheless, we may review this unpreserved issue because it is an issue of law regarding which all necessary facts were presented. *Joe Panian Chevrolet, Inc v Young*, 239 Mich App 227, 233; 608 NW2d 89 (2000). Again, this issue involves questions of statutory construction, which are reviewed de novo. *Weakland, supra* at 347.

As set forth in the preceding issue, the ADA, 42 USC 12132, generally provides protection to a "qualified

individual with a disability." 42 USC 12131(2) defines this term:

> The term "qualified individual with a disability" means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

The relevant provisions of the PWDCRA are similar. MCL 37.1302 generally provides the disabled with protection with regard to matters "unrelated to the individual's ability to utilize and benefit from the goods, services, facilities, privileges, advantages, or accommodations" of a public service. Notably, the phrase "unrelated to the individual's ability" is expressly defined for purposes of the relevant section of the PWDCRA as meaning "with or without accommodation, an individual's disability does not prevent the individual from . . . utilizing and benefiting from a place of public accommodation or public service." MCL 37.1103(l)(ii).

While defendant characterizes the public program or activity at issue as "pedaling a cycle," we find such characterization unreasonable. This case does not involve the provision of cycles to people by a governmental entity to participate in some type of cycling competition or a claim by plaintiff of entitlement to receive cycling equipment or adaptive aids for such equipment from a governmental entity. Further, there is simply no claim regarding a public program or activity that includes "pedaling a cycle" because defendant does not, with regard to the subject matter

of this case, provide a public service that involves it or its agents pedaling a cycle. Rather, the public service at issue is the regulation of public streets so that people generally are allowed to engage in cycling on defendant's streets. With the adaptive aid of an electric motor, plaintiff has the ability to use those streets for cycling purposes in the same manner as the nondisabled. That is, cycling with minimal interruption, without frequent stops to rest, and to enjoy the cycling environment and experience.

Defendant relies on language in *San Diego Unified Port Dist v Gallagher*, 62 Cal App 4th 501, 506; 73 Cal Rptr 2d 30 (1998), where a panel of the California Court of Appeals stated with regard to an ADA claim that, at first blush, anchoring and the ability to handle wind, waves, and wake appear to be essential features of sailing. This case has no bearing on the present case. We discussed above that an ability to perform continuous manual pedaling is not necessary to cycle on defendant's streets with the use of an electric-assist tricycle. Stated otherwise, such a tricycle with its adaptive device of a small electric motor provides plaintiff with the ability to handle all aspects of cycling.

Defendant further refers to language in *Concerned Parents to Save Dreher Park Center v West Palm Beach*, 846 F Supp 986, 990 (SD Fla, 1994), that "it may be the case that there are wheelchair-bound children who cannot meet the 'essential requirements' for a soccer team because they cannot run or cannot kick a ball." We find that defendant's effort to analogize the present case to a hypothetical claim involving disabled persons seeking to play on a sports team is flawed because plaintiff is not seeking to be a cyclist

on a racing team or otherwise participate in competitive cycling. In seeking to be allowed to use an electric-assist tricycle on defendant's public streets, plaintiff is not asking to be allowed to engage in a publicly sponsored athletic competition, but rather to simply be allowed to use an electric-assist tricycle to traverse the public streets. Accordingly, the relative level of plaintiff's cycling ability is immaterial. It is plaintiff's factually demonstrated ability to cycle and complete that operation with an electric-assist that is material to this case.

Defendant also discusses the statement in *Brickers v Cleveland Bd of Ed*, 145 F3d 846, 850 (CA 6, 1998), that "[t]he ADA does not demand that an employer exempt a disabled employee from an essential function of the job as an accommodation." Admittedly, it is inherent that in performing a job for an employer, an employee must have a basic ability to perform the essential functions of that job. However, the present case differs markedly from an employment context. In cycling on defendant's public streets, plaintiff is not performing a service for anyone and it is clear that unlike a prospective employee who cannot perform the essential functions of a job, plaintiff can engage in the "essential function" of cycling on defendant's streets with an electric-assist tricycle.

Finally, defendant discusses *Petzold v Borman's Inc*, 241 Mich App 707, 714-715; 617 NW2d 394 (2000), wherein this Court held that the plaintiff did not show that his Tourette Syndrome condition was unrelated to his job as a "bagger" where he had continual contact with the general public, and the condition caused him to involuntarily utter obscenities and racial epithets. We find *Petzold* clearly immaterial to the pres-

ent case. There is no reason to believe that plaintiff's condition would cause him to engage in disruptive or offensive conduct similar to that involved in *Petzold*. Also, this argument does not reasonably characterize the "public service" at issue. The public service in this case is not pedaling a cycle, but rather allowing the use of defendant's public streets for cycling.

In sum, we find the cases cited by defendant unpersuasive and thus defendant has failed to show that plaintiff is not a qualified person with a disability.

Defendant further argues that because it provides the reasonable accommodation of allowing disabled persons to use electric wheelchairs and Amigo carts (electric powered, three-wheeled, one-person scooters) on its public streets, it is not required to provide the further accommodation of allowing use of cycles equipped with electric motors.[7] The trial court stated in its decision:

> The court also rejects Defendant's claim that Plaintiff must accept the ordinance accommodation, which allows Plaintiff to use an Amigo type cart and motorized wheelchair. Defendant relies on the recent case of [*Bachman v Swan Harbour Assoc*, 252 Mich App 400; 653 NW2d 415 (2002)]. The *Bachman* case deals with a different issue then [sic] the issue before this court. This landlord-Tenant [sic] case holds that the landlord is required to provide only a reasonable accommodation to its disabled tenant. The landlord does not have to grant tenant every accommodation he requests. This case is not about a reasonable accommodation. Here, the offered accommodation, amigo cart and wheelchair, do not provide the benefit of enjoyment of cycling on the streets of Mackinac Island. The offered

---

[7] Notably, defendant does not argue in this issue that allowing the use of an electric-assist cycle would not itself be a reasonable accommodation.

accommodation does not provide the benefit available to non-disabled persons.

Defendant refers to *Hankins v The Gap, Inc,* 84 F3d 797, 800-801 (CA 6, 1996), for the related proposition that, under the ADA, "an employee cannot make his employer provide a specific accommodation if another reasonable accommodation is instead provided." In this regard, the court indicated that as long as the defendant "made available other reasonable and effective accommodations" to an employee, it did not matter whether other measures would have been a reasonable accommodation. *Id.* at 800. The basic principle to be derived from the discussion in *Hankins* is that, if a person or entity provides reasonable accommodations that allow a disabled person to perform a specific activity open to the nondisabled, such as working at a job, the disabled person has no basis for complaint under the ADA because some other type of reasonable accommodation was not used. We believe this principle is immaterial to the present case.

The relevant activity open to the nondisabled in this case is the ability to cycle on defendant's public streets. Allowing disabled persons to use electric wheelchairs and Amigo carts on the streets may well reasonably accommodate the disabled with regard to the analogous activity by the nondisabled of simply walking on the streets, but, it is plain that it is not reasonably analogous to being able to cycle on the streets. In other words, *Hankins* cannot reasonably be read to support the proposition that, because defendant makes accommodations for people with relevant disabilities to use its public streets for one purpose, it is not required to accommodate the use of

the streets by such people for another purpose open to the nondisabled.

Defendant also argues that this Court's decision under the PWDCRA in *Bachman, supra,* 653 NW2d 415; 252 Mich App 400 (2002), similarly supports its position that its duty "extends only to providing a reasonable accommodation, not any accommodation of [plaintiff's] choice." Defendant emphasizes the following discussion in *Bachman:*

> We conclude, contrary to the plaintiff's argument, that a landlord is not required to accommodate a disabled tenant's every request unless it imposes an undue hardship. Instead, the landlord's duty to accommodate requires those reasonable accommodations necessary for the disabled tenant's enjoyment of the premises as they relate to "rules, policies, practices, or services" and then only when the accommodations will not result in an undue hardship on the landlord. [*Id.* at 415.]

However, similar to the above discussion of *Hankins,* that a party subject to the PWDCRA (or the ADA) is not required to accommodate a disabled person's "every request" does not mean that a defendant is only required to accommodate a disabled person's use of a service or facility in only one way. That defendant is not required to honor plaintiff's "every request" does not change the fact that it has not accommodated his use of its public streets for the purpose of the intended use, cycling.

It seems apparent to us that defendant has reasonably accommodated use of its public streets by people with relevant disabilities in a manner analogous to walking on the streets by allowing use of electric wheelchairs and Amigo carts. However, this does not mean that defendant has reasonably accommodated

people with relevant disabilities in using the streets for the purpose of cycling, a purpose for which the nondisabled are able to use the streets with typical bicycles or tricycles that have no electric motor.

In any event, we find that *Hankins* and *Bachman* are not instructive in the present case where disabled persons who would need electric-assist cycles in order to reasonably be able to cycle on defendant's public streets are simply not allowed to do so.

Lastly, defendant argues that allowing plaintiff to use an electric-assist tricycle on defendant's public streets would constitute a fundamental or substantial change to the character of Mackinac Island and that the ADA does not require defendant to make an accommodation that would fundamentally or substantially alter the character of defendant's city. This issue involves a question of law, which is reviewed de novo. *In re Jude*, 228 Mich App 667, 670; 578 NW2d 704 (1998).

The trial court rejected the argument that the accommodation sought by plaintiff would fundamentally or substantially change the character of defendant's city:

> The record does not establish a hardship that excuses the Defendant from its duty to provide the accommodation Plaintiff seeks. Defendant has the right to limit the use of electric-assist cycles to persons who suffer impairment as defined in the statute, and to require proof thereof. Defendant can impose reasonable regulations concerning the use of these devices by controlling speed, braking capacity, noise level and the like. The permit process can control use. Defendant can police use to assure compliance with its permit. The record demonstrates Defendant has a history of regulation and compliance effort in connection with permits granted for other authorized motorized vehicle use.

Defendant claims that to provide Plaintiff with the subject accommodation will require it to make a fundamental or substantial modification in its operation or fundamental alteration in the nature of Defendant's programs, services and activities. The claim here is that the floodgates will be opened if Defendant is required to accommodate Plaintiff's electric-assist cycle. It is argued that other disabled persons will seek the same accommodation. This will lead to the use of electric-assist cycles by non-disabled persons. Such devices will become available for rental on the island. Visitors will bring electric-assist devices to the island. Soon thereafter pressure will build for the use of other types of motorized vehicles. The fear is that once the sausage is cut the rest of the sausage will quickly be carved. It would then follow that the Mackinac Island way-of-life has been destroyed. That which has existed for one hundred years has been lost. Mackinac Island will no longer be unique. It will become another noxious tourist area.

*    *    *

The court does not find, and the evidence does not support, the claim that to accommodate Plaintiff will constitute a fundamental change in the island way-of-life. Plaintiff's fears are speculative. It would be speculation to conclude that Plaintiff's accommodation will lead to the unrestricted use of motor vehicles on the island. The fear is understandable but not rational and not supported by evidence.

In *PGA Tour, Inc v Martin,* 532 US 661; 121 S Ct 1879; 149 L Ed 2d 904 (2001), the United States Supreme Court held that a sponsor of professional golf tournaments was required to allow a potential competitor with a disability to use a golf cart during a tournament. In short, tournament rules required competitors to walk the golf course rather than use carts during the pertinent tournament. *Id.* at 666-667 and n 4. In its discussion, the Court concluded that waiv-

ing the walking rule for the plaintiff would not fundamentally alter the tournament:

> In theory, a modification of petitioner's golf tournaments might constitute a fundamental alteration in two different ways. It might alter such an essential aspect of the game of golf that it would be unacceptable even if it affected all competitors equally; changing the diameter of the hole from three to six inches might be such a modification. Alternatively, a less significant change that has only a peripheral impact on the game itself might nevertheless give a disabled player, in addition to access to the competition as required by Title III, an advantage over others and, for that reason, fundamentally alter the character of the competition. We are not persuaded that a waiver of the walking rule for [the plaintiff] would work a fundamental alteration in either sense. [*Id.* at 682-683.]

While the present case does not involve a sporting event, we believe that *PGA Tour* is instructive in indicating that an entity subject to the ADA may have to alter its rules rather significantly to accommodate the disabled, without the alteration being considered to fundamentally alter the practices of the entity.

Allowing the use of electric-assist tricycles by people with appropriate disabilities on defendant's streets would not fundamentally or substantially alter the nature of Mackinac Island, but would only pose an opportunity for "peripheral impact" on the historic, general ban on motor vehicles on the island. Defendant has demonstrated its capacity to preserve its unique environment through the use of permits and enforcement. By permit and enforcement the city is able to regulate and avoid two groups of concern. The first group consists of those members of the public who have no capacity to cycle, but instead seek an alternative method of general transportation from

that which is available and effective. The second group consists of those members with the capacity to cycle that would exploit and feign disability to effect an alternative method of general transportation. Through regulation, permits, and enforcement, as suggested by the trial court in its findings, defendant can effectively deal with both groups of concern and thereby limit the "peripheral impact," promote the purposes of the PWDCRA, and preserve the unique features of the "Mackinac Island way of life."

We also believe that the small electric motor on electric-assist tricycles does not present significant pollution concerns—in stark contrast to exhaust fumes and noise from automobiles or motorcycles. There is also no indication that the use of electric-assist tricycles by even a substantial number of disabled island residents and visitors would require modification of defendant's streets as would the widespread use of automobiles and motorcycles. Perhaps most importantly, as defendant has effectively indicated, it is beyond reasonable dispute that the general absence of motor vehicles (as they are commonly understood) from Mackinac Island is one of its "essential aspects" as a tourist attraction and is also a central aspect of the way of life of residents on the island. Indeed, a change to allow the general widespread use of motor vehicles on Mackinac Island could sensibly be viewed as horrific. However, we believe it is manifest that an electric-assist tricycle capable of attaining a regulated speed of only about ten to twelve miles an hour is not a "motor vehicle" as the term is commonly understood and would not change the "essential aspect" of the general ban on motor vehicles on Mackinac Island. Instead, we liken

the electric-assist tricycle to the Amigo cart and find that the tricycle is essentially an equivalent substitute for a particularized purpose. Further, because defendant already permits the use of electric wheelchairs and Amigo carts, it cannot be said that the use of essentially de minimis motorized power in connection with cycling fundamentally changes the character of the island.

We hold that allowing plaintiff to use an electric-assist tricycle on defendant's public streets does not fundamentally or substantially alter the character of Mackinac Island.

Affirmed.