BUCK v THOMAS M COOLEY LAW SCHOOL

Docket No. 259347. Submitted June 6, 2006, at Lansing. Decided June
    20, 2006. Approved for publication August 17, 2006, at 9:00 a.m.

Nahzy Buck brought an action in the Ingham Circuit Court against
    Thomas M. Cooley Law School following her dismissal from the
    law school and its denial of her request for readmission. The
    plaintiff alleged, among other things, a violation of the Persons
    With Disabilities Civil Rights Act (PWDCRA), MCL 37.1101 *et seq.*
    The court, James R. Giddings, J., granted the plaintiff an ex parte
    temporary restraining order allowing her to attend the law school.
    The plaintiff stipulated the dismissal of one count of her com-
    plaint, and the court granted the law school summary disposition
    with regard to her remaining claims except the PWDCRA claim.
    On that issue, the court concluded that the law school had misled
    the plaintiff with regard to the existence of her learning disability
    and thus could be liable to the plaintiff under the PWDCRA. The
    law school appealed by leave granted.

    The Court of Appeals *held*:

    1. The PWDCRA does not require an educational institution to
    provide an opinion about why a student is having academic
    difficulties or to diagnose any condition a student may have. A
    claim that an incorrect judgment by an educational institution
    misled a student or discouraged the student from seeking another
    opinion does not fall within the PWDCRA. The trial court erred by
    concluding that the law school had a duty to not misdiagnose a
    condition and potentially mislead a student. The plaintiff was in
    the best position to determine the existence or extent of a
    disability. Before the plaintiff documented a disability and re-
    quested an accommodation, the law school had no duty under the
    PWDCRA to properly diagnose the plaintiff's alleged learning
    disability. Thus, there is no genuine issue of material fact regard-
    ing this issue, and the law school was entitled to summary
    disposition as a matter of law.

    2. The law school cannot be liable for failing to accommodate
    the plaintiff's learning disability during her first two terms of
    school, during which the plaintiff never asserted that she had a
    disability under the PWDCRA. After the plaintiff documented her

disability and notified the law school, the law school did accommodate her request for twice the normal amount of time for taking examinations. The law school did not fail to reasonably accommodate the plaintiff's learning disability when it refused her request to drop a class of her choosing late in the semester. To the extent that the plaintiff's psychologist proposed a reduced course load as an accommodation, the recommendation was unrelated to what the psychologist diagnosed as the plaintiff's primary deficiency.

Reversed and remanded for entry of summary disposition for the law school.

CIVIL RIGHTS — PERSONS WITH DISABILITIES CIVIL RIGHTS ACT — DISABILITIES — ACCOMMODATIONS FOR DISABILITIES — SCHOOLS.

The Persons With Disabilities Civil Rights Act does not require an educational institution to provide an opinion about why a student is having academic difficulties or to diagnose any condition a student may have; a claim that an incorrect judgment by an educational institution misled a student or discouraged the student from seeking another opinion does not fall within the act (MCL 37.1101 *et seq.*).

*Baligad & Hirsbrunner, PLC* (by *Beverly V. Baligad* and *Thomas S. Hirsbrunner*), for the plaintiff.

*Garan Lucow Miller, P.C.* (by *Rosalind Rochkind, Megan K. Cavanagh,* and *Michael P. McCasey*), for the defendant.

Before: SMOLENSKI, P.J., and HOEKSTRA and MURRAY, JJ.

PER CURIAM. Defendant appeals by leave granted the trial court's order denying its motion for summary disposition on plaintiff's claim of a violation of the Persons With Disabilities Civil Rights Act (PWDCRA), MCL 37.1101 *et seq*. We reverse and remand for entry of an order granting defendant's motion for summary disposition.

I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was born in Iran, was admitted as a student at defendant law school, commencing classes in

May 2000. From the beginning, plaintiff had concerns about her ability both to gain entry to law school and to succeed once there. Plaintiff's concerns stemmed from her low LSAT (Law School Admission Test) scores and the general anxiety she felt knowing she was "slow." She brought these concerns to the attention of various school officials, starting before her first term. Initially she met with Stephanie Gregg, Dean of Admissions, who referred plaintiff to Dean Paul Zelenski and to Dr. Patricia Wilson, head of the Academic Resource Center (ARC).[1]

Plaintiff went to see Dean Zelenski during the first or second week of classes. When plaintiff finally spoke with Dean Zelenski, she told him that she was finding law school "too fast" and asked him for help. According to plaintiff, Dean Zelenski told her that, because of her cultural background, she could not work in the United States anyway, and, though he was generally nice to her, he essentially brushed her off.

During the first term, plaintiff received only a 1.83 grade point average (GPA), putting her on academic probation. These low grades also resulted in her being sent to the ARC for evaluation by Dr. Wilson during her second term. Dr. Wilson gave her a reading and writing test, but plaintiff had trouble understanding it because she found Dr. Wilson's handwriting almost impossible to read.[2] Plaintiff saw Dr. Wilson three or four more times during that term. Dr. Wilson opined that it was very difficult to differentiate learning disabilities from general difficulties associated with using English as a second language.

---

[1] The ARC was defendant's resource center for assisting students in accomplishing their goals in law school.

[2] Although plaintiff at first thought her difficulties might have been due to a language problem, her husband also found it impossible to read.

Dr. Wilson also recommended various workshops to help plaintiff with her studies, but plaintiff found them mostly to be a waste of time, and they took away the time she had available for her regular classes. Despite that, plaintiff still attended every workshop she could. By this time, it is undisputed that plaintiff never asked for any accommodations from Dr. Wilson or from anyone else at the law school.

Dr. Wilson testified that the second time plaintiff came to see her was February 1, 2001, at which point she administered a reading test. According to Dr. Wilson, she sent plaintiff an e-mail telling plaintiff that, because her prior Canadian testing had indicated that plaintiff was not learning disabled, her problems likely stemmed from issues with her English, but she should consult a professional to be sure. Although Dr. Wilson admitted that she was not qualified to diagnose learning disabilities, she believed that an indicator pointing to a possible learning disability was a low score in reading comprehension combined with a high score in vocabulary. Conversely, she said, a low score in both makes a disability less likely. Dr. Wilson was also of the opinion that scoring poorly in all languages is an indicator of a disability, while scoring okay in one's native language while scoring low in English, as plaintiff had, tends to indicate that the problem is with the language, not any underlying disability.

Plaintiff's grades for her second term were also very bad, resulting in another term on academic probation. As a result, she was also required to take Introduction to Law II. In that class, one of the teaching assistants, Katika Mitchell, suggested to plaintiff, for the first time, that she might have a learning disability and should seek an accommodation. Mitchell then arranged an appointment for plaintiff to see Dr. Wilson about that.

At this meeting, plaintiff asked Dr. Wilson about diagnosing and accommodating learning disabilities. Dr. Wilson gave her a list of names of doctors that defendant used to evaluate learning disabilities. After approximately seven to ten days, plaintiff set an appointment with Dr. J. Keith Ostien (recommended by Dr. Wilson) because plaintiff was worried it was getting too late in the term to obtain an accommodation.

Plaintiff went to see Dr. Ostien on March 16, 2001, when he evaluated her for four or five hours and issued a report finding that she had two learning disabilities. In that same report, Dr. Ostien also gave plaintiff three written recommendations: (1) that she get more time for her exams, (2) that she seek counseling to deal with her anxiety, and (3) that she consider taking a lighter class load, leaving her more time to deal with each individual class and also reducing the pressure on her.

On March 23, 2001, plaintiff brought her doctor's report to Dean Zelenski and orally asked him for two accommodations based on its recommendations. First, she asked for additional time for each of her examinations and, second, she asked to reduce her course load by dropping one of her classes, Professional Responsibility. Dean Zelenski agreed to give her the extra examination time, but denied her request to drop a class because it was past the normal time in the term when students were allowed to drop a class. However, Dean Zelenski did offer to let plaintiff drop all her classes for a full refund, but plaintiff declined to do so. She and Dean Zelenski then both filled out and signed a standard form indicating that she would receive extra examination time for all her classes.

Plaintiff took her third-term examinations (with the accommodations) and still received very low grades in two of her classes and failed her Professional Respon-

sibility class. As a result, plaintiff had a cumulative GPA of 1.43 and was expelled from the law school for not maintaining a GPA above 2.0. She applied to defendant for reconsideration of the expulsion and later applied for readmission, but both applications were denied. She then filed this suit, some 11 months after the expulsion, alleging four counts against defendant.[3] She also sought an ex parte temporary restraining order (TRO) in order to attend defendant law school while this lawsuit was pending. On April 15, 2002, plaintiff was granted an ex parte TRO allowing her to attend the law school. According to the parties, the trial court has held several hearings on whether to issue a preliminary injunction, but it has never concluded the hearings. Instead, the court has allowed the TRO to remain in place for more than two years.[4]

Defendant eventually moved for summary disposition on all counts of plaintiff's complaint. Plaintiff

---

[3] Count I alleged violation of fiduciary duty, count II alleged violation of Michigan's Consumer Protection Act, count III alleged violation of the PWDCRA, and count IV alleged violation of plaintiff's constitutional right to due process.

[4] Although defendant has not specifically challenged the trial court's issuance and extension of the TRO allowing plaintiff to reenroll at the law school, we feel compelled to briefly give our opinion on this issue. A TRO is a form of extraordinary injunctive relief that is granted to a litigant who is threatened with immediate irreparable injury for the purpose of maintaining the status quo. *Psychological Services of Bloomfield, Inc v Blue Cross & Blue Shield of Michigan*, 144 Mich App 182, 185; 375 NW2d 382 (1985). The status quo has been defined as " 'the last actual, peaceable, noncontested status which preceded the pending controversy.' " *Id.* (citation omitted). The ex parte TRO at issue changed, rather than preserved, the status quo. Plaintiff was dismissed from defendant law school in June 2001 and was denied readmittance in August 2001. In April 2002, some eight months later, plaintiff filed this action, seeking and receiving a TRO ordering defendant to accept her into the law school. Plaintiff's last status was as a *former* student of the law school, so in effect the TRO altered the status quo and required affirmative action on the part of defendant. Additionally, as plaintiff's complaint suggests, if she were successful on her claim, she had an adequate

stipulated the dismissal of the fourth count (violation of due process), and the trial court granted defendant's motion with regard to the remaining claims except the claim under the PWDCRA. On that issue, the trial court concluded that defendant had misled plaintiff with regard to the existence of her disability, and thus could be liable to plaintiff under the PWDCRA.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision to grant or deny summary disposition. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). A claim under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004). The reviewing court must consider the affidavits, depositions, admissions, and other documentary evidence in the light most favorable to the nonmoving party. MCR 2.116(G)(5); *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). Summary disposition is appropriate when, except for the amount of damages, there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. MCR 2.116(C)(10); *Corley, supra* at 278. We also review de novo questions of statutory interpretation. *Nastal v Henderson & Assoc Investigations, Inc*, 471 Mich 712, 720; 691 NW2d 1 (2005).

## III. ANALYSIS

### A. MISLEADING/MISDIAGNOSIS CLAIM

Defendant asserts that the PWDCRA imposes no duty on an educational institution to diagnose a plain-

---

remedy at law, thus precluding the issuance of a preliminary injunction. *Michigan Council 25, AFSCME v Wayne Co*, 136 Mich App 21, 26; 355 NW2d 624 (1984).

tiff's potential disabilities. The trial court in this case seemed to agree with that proposition, but, nevertheless, went on to hold that there is a duty to not *misdiagnose* a condition and potentially mislead a student. In other words, the trial court apparently concluded that although no duty to diagnose existed, because defendant allegedly undertook such a duty, it could be held liable for failing to carry it out properly. We hold that the trial court erred in reaching that conclusion.

The PWDCRA guarantees the full and equal utilization of educational facilities without discrimination because of a disability. MCL 37.1102(1). Having no counterpart in the common law, the rights and duties under the PWDCRA are exclusive. That being said, there is nothing in the PWDCRA that requires an educational institution to provide an opinion about why a student is having academic difficulties or to diagnose any condition a student may have. We find nothing in the text of the PWDCRA that would impose any such duty on an educational institution, and plaintiff has failed to identify any such supporting language. Instead, plaintiff relies solely on a federal decision under a section of the federal Rehabilitation Act, 29 USC 794, *Monahan v Nebraska,* 687 F2d 1164 (CA 8, 1982). That decision, however, is of no avail, as it involves a different statute, and, more importantly, the court's discussion relied on by plaintiff is clearly dicta. See *id.* at 1170-1171. A claim that an incorrect judgment by the educational institution misled a student or discouraged her from seeking another opinion does not fall within the PWDCRA.

Here, the trial court concluded that defendant should have handled plaintiff's complaints of being "slow" and nervous by doing nothing or referring her to a profes-

sional, such as a psychologist. It ignored the fact that nothing in the PWDCRA requires this procedure and that plaintiff was in the best position to determine the possible existence or extent of a disability. *Lindberg v Livonia Pub Schools*, 219 Mich App 364, 367; 556 NW2d 509 (1996). Before plaintiff provided documentation of a disability and requested an accommodation, defendant had no statutory duty to act on behalf of plaintiff. Because the PWDCRA does not impose a duty on defendant to properly diagnose an alleged learning disability, there is no genuine issue of material fact regarding this issue, and defendant was entitled to judgment as a matter of law.[5]

Although we have concluded that the sole reason articulated by the trial court in denying defendant's motion was incorrect, we address defendant's argument that it had no duty to accommodate and that it did reasonably accommodate plaintiff as a matter of law. Because this is a legal issue that was raised below, we decide it here to avoid its repetition below.

### B. ACCOMMODATION CLAIM

Defendant asserts that it was entitled to dismissal of plaintiff's PWDCRA claim because it reasonably accommodated plaintiff's disability. The PWDCRA provides that "a person shall accommodate a person with a disability for purposes of employment, public accommodation, public service, education, or housing unless the person demonstrates that the accommodation would impose an undue hardship." MCL 37.1102(2). Under the PWDCRA, the plaintiff must prove that the defendant has failed to "accommodate" the disability. MCL

---

[5] A similar claim arising out of an alleged misdiagnosis of a learning disability was rejected in *Kaltenberger v Ohio College of Podiatric Medicine*, 162 F3d 432, 437 (CA 6, 1998).

37.1210(1); *Hall v Hackley Hosp*, 210 Mich App 48, 54; 532 NW2d 893 (1995). In the initial two terms of law school, plaintiff identified her academic difficulties as relating to general test-taking anxiety and to English being her second language. There is no authority that either of these conditions constitutes a learning disability under the PWDCRA. Additionally, plaintiff never requested accommodations for these nonspecific problems. Therefore, defendant cannot be liable for failing to accommodate plaintiff's alleged disability during her first two terms, when she herself never asserted that she had a disability. *Lindberg, supra* at 367.

Plaintiff first provided documentation of a learning disability and written notification of a need for accommodation on March 23, 2001, during her third term of law school. She requested twice the normal amount of time for her examinations and attached Dr. Ostien's report to the request. It is undisputed that defendant granted plaintiff twice the normal amount of time for her examinations.

Despite this accommodation, plaintiff claims that the law school improperly refused an oral request made at the same time to reduce her course load by allowing her to drop a specific class.[6] Plaintiff asserts that Dr. Ostien's report, which was attached to her written notification, contained a request for accommodation with regard to her course load. The report contained three recommendations:

> 1. *It is recommended that Nahzy receive accommodations* in her examinations at Cooley Law School in the form of double time for her examinations. I believe Nahzy should be granted the maximum time allowable under the accommodation rules for the completion of her examinations. I

---

[6] Defendant's policy requires written documentation of the disability and the suggested accommodations.

believe this would provide Nahzy a much fairer opportunity to demonstrate her actual knowledge of course material.

2. *It is recommended that Nahzy consider* involving herself in outpatient psychological treatment in order to examine issues related to her anxiety and her tendency to surpress [sic] her internal feelings and needs, and to develop more effective ways of managing her internal processes and interacting with the external world. Additionally, therapy could help Nahzy examine her tendency to be rather self-blaming, which only serves to increase her sense of internal pressure and anxiety.

3. *It is recommended that Nahzy consider* taking a reduced course load in order to provide her more time to focus on fewer courses at any given time. Taking a reduced course load also might help reduce some of the other pressures and demands in Nahzy's life at this time. [Emphasis added.]

A plain reading of the report reveals that the only recommendation specifically directed to defendant as an accommodation is that plaintiff receive twice the normal amount of time for her examinations, which defendant promptly provided. The other two recommendations suggest that *"Nahzy consider* involving herself in outpatient psychological treatment" and *"consider* taking a reduced course load . . . ." (Emphasis added.) This language contains a personal directive to plaintiff and does not suggest that the law school take any action.

However, even assuming that the recommendation for a reduced course load was meant for the law school to consider as an accommodation, and even considering plaintiff's testimony that she made an oral request for an accommodation, plaintiff cannot establish a claim under the PWDCRA based on the failure to permit her to drop a course of her choosing. We have held that the denial of some or all of a request for accommodation is

not a violation of the act if that denial is not unreasonable. *Lindberg, supra* at 367 n 2. As summarized in the report, plaintiff's learning disability was caused by a "deficiency in cognitive speed," and there was "evidence of a learning disorder in the area of visual processing, and being able to quickly and efficiently perform tasks based on visual input of information." According to this diagnosis, the essence of plaintiff's learning difficulties was her lack of speed in visual processing. Dr. Ostien opined that this deficiency "puts [plaintiff] at a distinct disadvantage in situations in which she has to take timed tests . . . ." Thus, he recommended that she be given more time on her examinations. As noted, defendant promptly granted plaintiff's request for twice the normal amount of time to take her examinations.[7] Therefore, defendant accommodated the recommendation relating to the crux of plaintiff's learning disability.

Dr. Ostien also recommended that plaintiff consider taking a reduced course load as a means of "provid[ing] her more time to focus on fewer courses" and "help[ing] reduce some of the other [i.e., nonschool-related] pressures and demands in Nahzy's life . . . ." This recommendation was based on plaintiff's high levels of "distress, anxiety, and pressure," not on her lack of speed in visual processing. Therefore, it was not unreasonable for defendant to refuse to waive its settled policy for dropping courses where the recommendation regarding plaintiff's course load was unrelated to what was diagnosed as her primary deficiency. We hold that defendant did not fail to reasonably accommodate plaintiff's learning disability by refusing her request to drop a course of

---

[7] Despite this accommodation, plaintiff received very low grades in two of her classes and failed the third class, resulting in a cumulative GPA of 1.43 and expulsion from the law school for failing to maintain a GPA above 2.0.

her choosing late in the semester, particularly in light of the diagnosis and other accommodations made for her.[8]

Reversed and remanded for entry of an order granting defendant's motion for summary disposition in full and dismissing plaintiff's claims. We do not retain jurisdiction.

---

[8] Our conclusion comports with federal case law holding that a reviewing court must give deference to professional academic decisions when evaluating the reasonable accommodation requirement. See *Regents of the Univ of Michigan v Ewing*, 474 US 214, 225; 106 S Ct 507; 88 L Ed 2d 523 (1985).