*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CHARLES BLACKWELL,

        Plaintiff-Appellee,

v

CITY OF INKSTER,

        Defendant-Appellant.

FOR PUBLICATION
April 07, 2026
11:12 AM

No. 372782
Wayne Circuit Court
LC No. 24-009573-CZ

Before: RICK, P.J., and YATES and MARIANI, JJ.

YATES, J.

Plaintiff, Charles Blackwell, has earned a reputation as a thorn in the side of local officials in the Detroit area, but plaintiff is confined to a wheelchair due to a spinal-cord injury that rendered him paraplegic, so he cannot readily attend in-person meetings, including those of the city council of defendant, city of Inkster. As a result, the self-styled "local government watchdog and political activist" asked to participate in the public-comment portion of city council meetings by submitting in advance comments that could be read aloud at meetings. Defendant initially accommodated his request at two meetings in June 2024 by reading plaintiff's comments, but subsequently adopted a policy limiting public comments to in-person remarks. Plaintiff filed suit, seeking injunctive relief under the Persons With Disabilities Civil Rights Act (PWDCRA), MCL 37.1101 *et seq.*, to require defendant to read aloud his comments at city council meetings. The trial court issued an injunction obligating defendant to read aloud plaintiff's comments at meetings, and defendant then appealed of right. We affirm.

## I. FACTUAL BACKGROUND

By all accounts, plaintiff was paralyzed because of a spinal-cord injury, and he now faces great difficulty attending meetings of the Inkster city council in person. The meetings are streamed to the public, so anybody can virtually watch the meetings, but defendant does not have the present ability to allow for virtual participation. Plaintiff apparently avails himself of the opportunities to watch the meetings, but his paraplegia prevents him from attending the meetings in person.

In June 2024, plaintiff contacted the Inkster city clerk and the city attorney to request an accommodation that would enable him to offer public comments at city council meetings. Under

plaintiff's proposal, he would submit his prepared public comments by e-mail to the city clerk and the city attorney before each city council meeting, and then a person employed by defendant would read aloud his public comments at each meeting. At first, defendant granted the accommodation by reading aloud the comments that he submitted before two city council meetings in late June.

But on July 1, 2024, the Inkster city council adopted a policy requiring public comments to be made in person. After that, plaintiff complained to city officials, who offered him no relief. On July 5, 2024, plaintiff filed this action alleging a violation of the PWDCRA and requesting an injunction barring "the City of Inkster from further enforcing its 'in-person only' public comment policy against citizens who have a qualified disability under [the] PWDCRA." Further, plaintiff demanded injunctive relief "requiring the City of Inkster to provide reasonable accommodations as required by [the] PWDCRA."

On July 15, 2024, the trial court issued an ex parte temporary restraining order prohibiting defendant "from enforcing the 'in-person only' public comment policy passed by the Inkster City Council at the July 1st, 2024, Inkster City Council meeting." In addition, the trial court instructed defendant to promptly show cause "why a preliminary injunction should not be ordered according to the terms" of the temporary restraining order.

Seemingly in response to the trial court's order, defendant's city council revised its public-comment policy by permitting members of the public to submit by e-mail written public comments 72 hours before each city council meeting. Under the revised policy, the written public comments would then be provided to each city council member before the meeting and would be included in the record as part of the meeting minutes. But the revised policy did not require or permit written comments to be read aloud at any city council meeting.

Meanwhile, in the trial court, defendant argued that its amended policy was compliant with the Open Meetings Act (OMA), MCL 15.261 *et seq*. Defendant contended that an injunction was improper because it would impose an undue hardship and it would fundamentally change meetings of the city council. Defendant submitted no evidentiary support for any of its arguments, however, choosing instead to rely on legal theories and bare factual allegations to fend off plaintiff's request for injunctive relief.

The trial court took up the show-cause order at a hearing on August 27, 2024, and then the trial court issued a written opinion and order on September 25, 2024. The trial court reasoned that plaintiff "had made a prima facie showing" that defendant "failed to accommodate his disability," so the burden shifted to defendant to establish "that the requested accommodation would impose 'undue hardship.' " The trial court explained that defendant had "failed to provide any evidence that allowing [p]laintiff's public comments to be read during City Council meetings would cause an undue hardship." Indeed, as the trial court noted, "[d]efendant has twice before accommodated [p]laintiff's disability by having [p]laintiff's comments read during City Council meetings." Also, the trial court stated "that [p]laintiff's comments, if read out loud during the meeting, would still be subject to any other rules and policies which generally apply to those making public comments before the City Council." Hence, the trial court ruled in plaintiff's favor on his PWDCRA claim, issued a permanent injunction that prohibited defendant "from enforcing against [p]laintiff . . . the 'in-person' only public comment policy passed by the Inkster City Council on July 1, 2024[,]" and instructed defendant "to read written public comments submitted by [p]laintiff . . . out loud during

Inkster City Council meetings, subject to any other rules and policies which apply generally to public comments made before the Inkster City Council." Defendant now challenges that injunctive order.

## II. LEGAL ANALYSIS

On appeal, defendant asserts that the trial court erred by employing an injunctive order to prevent defendant from enforcing its "in-person only" public comment policy against plaintiff and to compel defendant to read aloud at city council meetings the public comments sent by plaintiff. "A trial court's decision to grant or deny injunctive relief is reviewed for an abuse of discretion." *Janet Travis, Inc v Preka Holdings, LLC*, 306 Mich App 266, 274; 856 NW2d 206 (2014). Such an abuse of discretion occurs only when the trial court's ruling falls outside the range of reasonable and principled outcomes. *Saffian v Simmons*, 477 Mich 8, 12; 727 NW2d 132 (2007). Questions of statutory interpretation are reviewed de novo, *In re Klein Estate*, 316 Mich App 329, 333; 891 NW2d 544 (2016), so this Court need not afford deference to the trial court's resolution of a legal issue. Applying these standards, we shall first consider one threshold argument made by plaintiff, and then turn to the central issue in this case by analyzing how the PWDCRA and the OMA interact when a person with a recognized disability requests an accommodation in order to participate in a public meeting.

### A. PLAINTIFF'S CHALLENGE TO DEFENDANT'S APPELLATE BRIEF

Plaintiff insists that we should consider defendant's appellate arguments waived for failure to sufficiently brief the issues on appeal. "Insufficiently briefed issues are deemed abandoned" on appeal. *Greater Bethesda Healing Springs Ministry v Evangel Builders & Constr Managers, LLC*, 282 Mich App 410, 413; 766 NW2d 874 (2009). Defendant's appellate brief, which is oddly called an "amended claim of appeal," contains assertions that are unsupported by evidence or citations to the lower-court record, but we conclude that defendant has offered enough arguments, citations to authority, and references to the record to enable us to undertake an informed analysis of the issues. Thus, defendant's arguments are properly before us, *id*., so we elect to consider those arguments.

### B. DEFENDANT'S CHALLENGE TO THE TRIAL COURT'S INJUNCTION

Defendant has framed this dispute as a conflict between the PWDCRA and the OMA. The trial court relied on the PWDCRA to provide injunctive relief to plaintiff, but defendant contends that the OMA controls the outcome of this case, no matter what the PWDCRA requires. Therefore, we must initially address the viability of plaintiff's claim under the PWDCRA, and then determine whether the OMA mandates any modification of the outcome dictated by the PWDCRA.

#### 1. PLAINTIFF'S PWDCRA CLAIM

From start to finish in the trial court, plaintiff relied on the PWDCRA to support his claim that defendant had to accommodate his disability by reading his public comments aloud at the city council meetings. The PWDCRA includes straightforward guarantees and protections for people with disabilities. First, MCL 37.1102(1) guarantees "[t]he opportunity to obtain . . . full and equal utilization of public accommodations [and] public services . . . without discrimination because of a disability . . . ." Second, MCL 37.1102(2) mandates that "a person shall accommodate a person

with a disability for purposes of . . . public accommodation [and] public services . . . unless the person demonstrates that the accommodation would impose an undue hardship." Those provisions define the general nature of a PWDCRA claim. Further, MCL 37.1302(a) prohibits "[d]eny[ing] an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation or public service because of a disability that is unrelated to the individual's ability to utilize and benefit from the goods, services, facilities, privileges, advantages or accommodations . . . ." A person claiming a violation of the PWDCRA may bring a civil action for injunctive relief, MCL 37.1606(1), as plaintiff has done in this case.

A plaintiff with a disability who alleges a failure to accommodate under those provisions first must "make a prima facie showing," which includes proof of a disability as defined in the act. *Cebreco v Music Hall Ctr for the Performing Arts, Inc*, 219 Mich App 353, 359-360; 555 NW2d 862 (1996); see MCL 37.1103(d) (defining "disability" for purposes of the PWDCRA). After the plaintiff makes such a prima facie showing, "the burden of proof shifts to the defendant to show that the accommodation required would impose an undue hardship." *Cebreco*, 219 Mich App at 360 (quotation marks and citation omitted). And if the defendant makes that showing, it becomes the "plaintiff's burden to prove by a preponderance of the evidence that an accommodation would not impose such a hardship." *Id*. at 361. With that burden-shifting framework in mind, we must decide whether the trial court properly applied the PWDCRA to the facts of this case.

As an initial matter, defendant faults the trial court for ruling that public comments at city council meetings are a "public service" under the PWDCRA. Under MCL 37.1301(b), a "public service" includes "a county, city, village, [or] township[.]" Thus, according to MCL 37.1301(b), defendant, as a city, is a "public service." See *Bertrand v City of Mackinac Island*, 256 Mich App 13, 18; 662 NW2d 77 (2003) ("The applicable statutory definition of a 'public service' includes a city, . . . and thus includes defendant."). Opportunities to make public comments at a city council meeting are "services," "privileges," "advantages," and "accommodations" provided and regulated by defendant, as contemplated by MCL 37.1302(a).

According to the PWDCRA, a disabled person is entitled to "the full and equal enjoyment" of the services, privileges, advantages, and accommodations provided by a city. MCL 37.1302(a). Defendant does not dispute that plaintiff's condition constitutes a "disability" in the context of this case. See MCL 37.1103(d)(*i*)(B). Plaintiff contended that, because of his condition, he was unable to attend the city council meetings. The trial court found that "[a]lthough [p]laintiff had been able to make in-person appearances in the past, he is no longer able to do so." Accordingly, in bringing this action requesting to have his public comments read aloud at city council meetings, plaintiff is asking for the same "full and equal enjoyment" as nondisabled people of the opportunity to make public comments during city council meetings.

Defendant contends that plaintiff was not deprived of "the full and equal enjoyment" of the opportunity to publicly comment during city council meetings because the 72-hour written notice provision would allow plaintiff's written comments to be in the record and to be distributed to the city council members. But under the 72-hour written notice provision, plaintiff's comments would not be heard by the public or members of the city council during the meetings. Although plaintiff's comments would reach some of the public as part of the official record of the meeting, that public exposure is much less significant than being heard by the attendees of the meeting. Nondisabled people who speak at meetings have their public comments heard not only by members of the city

-4-

council, but also by all members of the public in attendance. The 72-hour written notice provision does not provide plaintiff with "the full and equal enjoyment" of the opportunity to provide public comments during city council meetings. Therefore, plaintiff's claim falls within the ambit of the PWDCRA, MCL 37.1302(a), because he is seeking the same measure of full and equal enjoyment as people without disabilities of services, privileges, advantages, or accommodations provided by defendant. *Bertrand*, 256 Mich App at 19.

Because plaintiff established a prima facie case under the PWDCRA, the burden shifted to defendant "to show that the accommodation required would impose an undue hardship." *Cebreco*, 219 Mich App at 360 (quotation marks and citation omitted). A duty to provide an accommodation to a disabled person exists "if accommodation can be accomplished without undue hardship on the person offering the goods or services to the public." *MOSES, Inc v SEMCOG*, 270 Mich App 401, 421; 716 NW2d 278 (2006). The PWDCRA does not define what constitutes an "undue hardship," but that concept implies "a standard of reasonableness" that depends on the circumstances. *Rourk v Oakwood Hosp Corp*, 458 Mich 25, 35-36; 580 NW2d 397 (1998); see also *Buck v Thomas M Cooley Law Sch*, 272 Mich App 93, 103-104; 725 NW2d 485 (2006) ("[D]enial of some or all of a request for accommodation is not a violation of the act if that denial is not unreasonable."). An accommodation is considered reasonable whenever it "imposes no fundamental alteration in the nature of the program or undue financial and administrative burdens." *Bachman v Swan Harbour Assoc*, 252 Mich App 400, 420; 653 NW2d 415 (2002) (quotation marks and citation omitted). An "undue hardship" may include "financial expenses, inconvenience to other patrons, safety or fire hazards, and so forth." *Cebreco*, 219 Mich App at 361.

Here, as the trial court aptly observed, defendant accommodated plaintiff at two meetings of the city council in June 2024 by reading his comments aloud at the meetings, and nothing in the record indicates that that accommodation imposed any "undue hardship" on defendant. Defendant elected to stop accommodating plaintiff in that manner after the city council adopted the policy on July 1, 2024, that allowed only in-person public comments. The adoption of that policy did nothing to render unreasonable the accommodation that defendant had afforded plaintiff at two city council meetings in June. In fact, it seemed just as reasonable in July 2024 as it was in June 2024 to read aloud the public comments submitted in advance by plaintiff. Thus, the trial court did not commit an abuse of discretion when it entered an injunction that merely required defendant to keep doing what it had done without any difficulty at two city council meetings in June 2024. In sum, the trial court's permanent injunction conformed to the standards established in the PWDCRA.

## 2. DEFENDANT'S OMA ARGUMENT

Defendant contends that even if the trial court acted in conformity with the PWDCRA by entering its injunction, the language of the OMA mandates a different result. The OMA "generally requires 'decisions' or 'deliberations' of a 'public body' to be open to the public." *Davis v City of Detroit Fin Review Team*, 296 Mich App 568, 576; 821 NW2d 896 (2012), citing MCL 15.262 and MCL 15.263. Under the OMA, "a public body may establish reasonable rules and regulations to minimize the possibility of disrupting the meeting." MCL 15.263(1). The competing parties in this case cite Attorney General Dana Nessel's opinion analyzing how the OMA interacts with the

Americans with Disabilities Act (ADA), 42 USC 12101 *et seq.*,[1] and the Rehabilitation Act, MCL 395.81 *et seq.* OAG, 2022, No. 7,318 p 1 (February 4, 2022).[2] Specifically, the Attorney General's opinion states that the OMA "does not contemplate wholly virtual meetings." *Id.* at 4. According to that opinion, "there is nothing in the OMA that *requires* a public body to accommodate . . . a disabled member of the general public, who is unable to attend an in-person meeting of that body due to a medical condition, . . . and requests an accommodation." *Id.* at 6. "In fact, the OMA does not even address the issue of accommodation." *Id.* In addition, "a request for a *fully* virtual option is more likely to be viewed as a fundamental alteration of a board's or commission's services, and therefore not required." *Id.* at 13. When "that option is not necessary to accommodate a qualified individual with a disability, the ADA does not require it and the OMA would not permit it" because "[t]he Legislature's clear intent behind the OMA was to have in-person meetings." *Id.*

Defendant describes the injunction granting plaintiff's accommodation as requiring "fully virtual" city council meetings. Defendant asserts, by analogy to the Attorney General's reasoning as to the ADA, that requiring fully virtual city council meetings would be a fundamental alteration of those meetings. Whether a fully virtual meeting would be a fundamental alteration is not before us, though, because the injunction issued by the trial court does not require a virtual meeting. The trial court's injunction simply instructed defendant to read plaintiff's submitted public comments "out loud during Inkster City Council meetings, subject to any other rules and policies which apply generally to public comments made before the Inkster City Council." The character of defendant's city council meetings, i.e., conducted in person and streamed virtually, remains unchanged under the trial court's injunction. Consequently, the trial court's application of the PWDCRA to provide an accommodation to plaintiff does not run afoul of the language or purpose of the OMA.

Defendant nonetheless claims that the injunction imposes a hardship because it contravenes defendant's authority to establish and enforce rules for city council meetings under the OMA. The OMA does not obligate defendant to provide accommodations to people with disabilities, but the PWDCRA plainly imposes such obligations. "We are required generally to harmonize all statutory provisions if we can do so reasonably," *In re Huntington Estate*, 339 Mich App 8, 22; 981 NW2d 72 (2021), and we can readily harmonize the language of the OMA and the PWDCRA with regard to the accommodation of people with disabilities. Indeed, the injunction in this case does precisely that, affording an accommodation to plaintiff that does not fundamentally alter the nature of city council meetings.

The trial court's injunction makes clear that the right granted to plaintiff to have his written public comments read aloud at the city council meetings is "subject to any other rules and policies

---

[1] Whenever this Court interprets provisions of the PWDCRA, "analogous federal precedents are persuasive, although not necessarily binding." *Chiles v Machine Shop, Inc*, 238 Mich App 462, 472; 606 NW2d 398 (1999) (quotation marks omitted), quoting *Chmielewski v Xermac, Inc*, 457 Mich 593, 601; 580 NW2d 817 (1998). Thus, this Court "may look to the ADA and federal cases interpreting the ADA for guidance," but this Court need not "follow federal precedent in analyzing the PWDCRA unless this Court concurs with such analysis." *Chiles*, 238 Mich App at 472-473.

[2] "Opinions of the Attorney General are not binding on the courts." *Martin v Murray*, 309 Mich App 37, 42 n 4; 867 NW2d 444 (2015) (quotation marks and citation omitted).

which apply generally to public comments made before the Inkster City Council." The trial court delicately struck an appropriate balance between the standards of the OMA and the requirements of the PWDCRA, thereby harmonizing the statutory dictates prescribed by our Legislature. As a result, the trial court's injunction comports with the standards of the PWDCRA, and nothing in the OMA undermines the trial court's reliance upon the PWDCRA to obligate defendant to read aloud at city council meetings the public comments submitted by plaintiff in advance of each meeting. For those reasons, we conclude that the trial court did not abuse its discretion when it granted the permanent injunction that it entered.

Affirmed.

/s/ Christopher P. Yates
/s/ Michelle M. Rick
/s/ Philip P. Mariani