The Honorable Roy Ragland State Representative Post Office Box 610 Marshall, Arkansas 72650-0610
Dear Representative Ragland:
I am writing in response to your request for an opinion on whetherAct 701 of 2009 violates the Americans with Disabilities Act.
Act 701 amended A.C.A. § 27-21-106 (Supp. 2009), which generally prohibits the operation of all-terrain vehicles ("ATVs") on the public streets and highways of the State. The prohibition is subject, however, to certain exceptions, one of which was amended by Act 701 and is at issue in this opinion.
Prior to Act 701, subsection (a)(3) of the statute permitted certain persons[1] to operate ATVs on the rights of way of highways within the State. Act 701 amended the statute to allow ATV operation by the designated persons on highway shoulders. Act 701, in other words, changed the law to move the ATV traffic in question from the right of way to the shoulder.[2] *Page 2 
You state that many highways in rural parts of the State have limited or no shoulders, which requires disabled persons to "stay home or violate the law by driving on the actual highway."
RESPONSE
In my opinion, Act 701 does not, in and of itself, violate the Americans with Disabilities Act (the "ADA"). It is also my opinion, however, that in a particular case limited to its own individual facts the ADA might require the State to allow a disabled person to operate an ATV on a highway right of way.
Title II, Part A of the ADA, codified at 42 U.S.C. §§ 12131 to 12134, generally prohibits public entities[3] from discriminating against disabled persons[4] in the provision of services, programs, and activities.[5] Courts have held that a public body is in compliance with the ADA if disabled persons have "meaningful access" to the public body's services, programs, and activities.[6] A public body may be *Page 3 
required to make reasonable modifications of its rules in order to give disabled people meaningful access to its services, programs, and activities.[7]
In determining whether a particular modification is reasonable, or whether the modification will allow an individual with a disability to meet the essential eligibility requirements of the public service, program, or activity, the public entity can and must consider the modification's impact on the public health and safety.[8] It is clear, for example, that a public body is not required to modify its rules so as to issue a driver's license to a person who is completely blind. Such a modification is not reasonable; stated another way, the modification does not allow a blind person to meet an essential eligibility requirement (adequate eyesight) that is fundamental to ensure safety on the roadways. Likewise, the court in Young held that a city was not required, due to safety concerns among other factors, to allow a disabled person unrestricted access to rights of way of the city streets in a golf cart. Young,411 F. Supp.2d at 1313-1314.
It is clear that the reasonableness of proposed or requested modifications of law to accommodate access for disabled people is evaluated individually, on a case-by-case basis, having due regard to the nature and severity of the individual's disability, the risks to public safety, and all other relevant facts.[9] The requirement *Page 4 
for an individualized inquiry in each case is the primary reason I cannot generalize about Act 701's status under the ADA.
I believe it is appropriate to regard A.C.A. § 27-21-106(a)(3), the statute at issue in this opinion, as a modification of the State's general ban on ATV traffic, which modification was enacted to help disabled people gain access to the public highways. I believe it is also appropriate, then, to paraphrase your question, using the language of the ADA, as two separate questions as follows:
 Is it always necessary, adequate, and reasonable for the State of Arkansas, in order to provide meaningful access to the public highways to each qualified individual with a disability within the State, to permit, as a modification of its ban on ATV traffic on the highways, each qualified person with a disability to operate an ATV on the right of way of the public highways?
 Is it never necessary, adequate, and reasonable for the State of Arkansas, in order to provide meaningful access to the public highways to each qualified individual with a disability within the State, to permit, as a modification of its ban on ATV traffic on the highways, each qualified person with a disability to operate an ATV on the shoulder of the public highways?[10]
Simply to state these questions is almost to answer them. The answer to both questions is "no."
Many disabled people, of course, drive conventional automobiles with standard controls or hand controls on the State's highways. These people already have meaningful access to the State's highways. Accordingly, the State is not required to provide any modification of any rule with respect to such people. The State would not violate the ADA, with respect to any such person, even if it completely *Page 5 
repealed the exception contained in A.C.A. § 27-21-106(a)(3). Act 701 clearly does not violate the ADA with respect to such people.
With respect to a disabled person who cannot drive a conventional automobile, but can and does operate an ATV, is the exception contained in A.C.A. § 27-21-106(a)(3), either before or after Act 701, a reasonable modification that allows meaningful access to the public highways? The answer depends on the prevailing facts, including the existence and condition of a shoulder, the speed and volume of prevailing traffic where the ATV would be used, the visibility along the highway to be used, the speed at which the ATV can be operated safely, the availability of alternate routes, and any number of other factors whose relevance can be determined only in a particular case.
Accordingly, while Act 701, in and of itself, does not violate the ADA, one can imagine a fact situation in which the operation of an ATV on the highway right of way, or on the highway shoulder, would be a reasonable accommodation to afford a disabled person meaningful access to the public highways.
Assistant Attorney General J. M. Barker prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] The exception is available to any person who has lost one or both legs above the ankle or has a "serious walking handicap," as certified by a physician. Act 701 did not change the group of persons to whom the exception applies.
[2] Prior to Act 701, the exception was applicable to all state and federal highways other than those of the federal interstate highway system. See A.C.A. § 27-21-106(a)(3) (Repl. 2008). Act 701 added "fully-controlled access highways" to the highways not subject to the exception. See
A.C.A. § 27-21-106(a)(3) (Supp. 2009). I do not interpret your opinion request as being concerned with this addition and I do not consider it herein.
[3] The State of Arkansas is clearly a "public entity" subject to the rule of 42 U.S.C. § 12132.See 42 U.S.C. § 12131(1).
[4] In particular, 42 U.S.C. § 12132 provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." "Disability" is defined in 42 U.S.C. § 12102(1). I assume for purposes of this opinion that persons described in A.C.A. § 27-21-106(a)(3) have a disability, as defined in the ADA, but there can be no assurance of the accuracy of that assumption with respect to any particular individual.
[5] It is likely that a court would hold that the public highways involve a service, program, or activity of the State for purposes of the ADA. See Young v. City of Claremore,411 F. Supp.2d 1295, 1304 (N.D. Okla. 2005) (use of the public roads "for purposes of transportation" was a service, program, or activity); Ohio Op. Att'y Gen. 2008-030 at 2, 2008 WL 3921382 (use of the public roads "for purposes of operating a motor vehicle to transport oneself" was a service, program, or activity). Butsee Ark. Op. Att'y Gen. 94-281 (opining that the requirement to pass a vision test to obtain an Arkansas driver's license does not violate the ADA, and quoting Buhl v. Hannigan, 16 Cal. App. 4th 1612, 20 Cal. Rptr. 2d 740 (1993), holding that the ADA does not address the issue of the right of a disabled person to operate a motor vehicle). I assume, only for purposes of this opinion, that a service, program, or activity of the State is present under the ADA with respect to the public highways, but there can be no assurance that a court would ultimately so hold. In addition, as demonstrated by Young
(transportation in general) and the cited opinion of the Attorney General of Ohio (transportation of oneself via motor vehicle, in particular), there can be no assurance of the scope with which a court would define any service, program, or activity found to be present. The defined scope of the service, program, or activity could affect the determination of reasonableness of a proposed modification of the rules relating thereto.
[6] See, e.g., Henrietta D. v. Bloomberg,331 F.3d 261 (2nd Cir. 2003), cert. denied541 U.S. 936 (2004); Randolph v. Rodgers,170 F.3d 850 (8th Cir. 1999); Young, supra
note 5. A person who has meaningful access to a public service, program, or activity is not, in the words of 42 U.S.C. § 12132, being "excluded from participation in or be[ing] denied the benefits of, . . . or be[ing] subjected to discrimination" with respect thereto. This "access" interpretation of the statute is confirmed by agency pronouncement. The Department of Justice has promulgated regulations under Title II, Part A of the ADA, including one that provides that "[a] public entity shall operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readilyaccessible to and usable by individuals with disabilities."28 CFR § 35.150(a) (emphasis added).
[7] The protections of 42 U.S.C. § 12132, quoted in footnote 4, extend only to a "qualified individual with a disability." (Emphasis added.) The term "qualified individual with a disability" is defined in part relevant to this opinion as a person with a disability "who, with or without reasonablemodifications to rules, policies, or practices, . . . meets the essential eligibility requirements for . . . participation in programs . . . provided by a public entity." 42 U.S.C. § 12131(2) (emphasis added).
[8] See Young,411 F. Supp.2d at 1313, citing 42 U.S.C. § 12182(B)(3); seealso, e.g., Mason v. Correctional Medical Ser.,559 F.3d 880 (8th Cir. 2009); Pruett v.Arizona, 606 F. Supp.2d 1065 (D. Ariz. 2009).
[9] "Resolution of [questions of satisfaction of `essential eligibility requirements' under 42 U.S.C. § 12131(2) and the `reasonableness' of a proposed modification] requires an individualized inquiry, which is highly factual in nature." Ohio Op. Att'y Gen. 2008-030 at 3, 2008 WL 3921382, citingBuck v. U.S. Dept. of Transportation,56 F.3d 1406 (D.C. Cir. 1995), Brennan v. Stewart,834 F.2d 1248 (5th Cir. 1988). See also Young,411 F. Supp.2d at 1310.
[10] The Department of Justice is responsible for administering Title II, Part A of the ADA and has published its Title II Technical Assistance Manual to help state and local governments comply with the ADA. The Manual contains several examples of reasonable modifications, one of which states that "[a]llowing use of [a] golf cart . . . on the shoulders of public highways where pedestrians are permitted, in limited circumstances that do not involve a significant risk to the health or safety of others, is a reasonable modification of the county policy [prohibiting the use of golf carts on public highways]." Title II Technical Assistance Manual § II-3.6100 (emphasis added). *Page 1